REED v. ROCKLIFF-GIBSON CONST. CO. *et al.*

No. 1084.   Opinion Filed February 4, 1910.

(107 Pac. 168.)

1.   **MUNICIPAL CORPORATIONS—Contracts — Competitive Bids.**
The true intent and purpose of that part of section 4, art. 1, c. 10, p. 171, Sess. Laws 1907-08, which provides that, "At the time and place specified in such notice, the mayor and council shall examine all bids received, and without unnecessary delay award the contract to the lowest and best bidder," is to secure economy and protect the public from collusive contracts or favoritism or fraud, and to promote actual, honest, effective competition.

2.   **SAME—Street Improvements—Use of Patented Material...** Where the mayor and council of a city of the first class pass a resolution stating the material to be used in certain street improvements shall be "Hassam pavement," a patented material or process, and the notice to contractors published pursuant to said resolution contains a statement that the owner of all patents and process covering the laying of such Hassam pavement will furnish to any bidder to whom the contract may be awarded the right to lay said pavement and furnish to such bidder an expert to give proper advice as to the laying thereof, at a stipulated price, and a written offer by said owner to this effect is on file in the office of the city clerk during all the time said notice is being published and up to the time a contract for doing said work is let, such contract involving in its execution the use of such patented material or process is not invalid in the absence of actual fraud or deception.

(Syllabus by the Court.)

*Appeal from Superior Court, Logan County; J. M. Sandlin, Judge.*

Action by J. P. Reed against the Rockliff-Gibson Construction Company and H. E. Derwin. Judgment for defendants, and plaintiff brings error. Affirmed.

*Mauntel & Stevens,* for plaintiff in error.—Citing:   *Dean v. Charlton,* 23 Wis. 590; *Siegel v. City of Chicago,* 79 N. E. 280: *Finneran v. Bithulithic Paving Co.,* 116 Ky. 495; *Fishburn v. City of Chicago,* 49 N. E. 343; *National Surety Co. v. K. C. Pressed Brick Co.,* 84 Pac. 1034; *Monaghan v. City of Indianap-*

634     SUPREME COURT OF OKLAHOMA.

Reed v. Rockliff-Gibson Const. Co. *et al.*

*olis,* 76 N. E. 424; *Seibert v. Indianapolis,* 81 N. E. 99; *Wickhire v. City of Elkhart,* 43 N. E. 216; *City of Atlanta v. Stein,* 36 S. E. 932; *Nicholson Paving Co. v. Painter,* 35 Cal. 699; *Mulrein v. Kalloch,* 61 Cal. 522; *Smith v. Syracuse Implement Co.,* 53 N. E. 1077.

*Horace Speed, E. W. Snoddy,* and *Fulkerson, Graham & Smith,* for defendants in error.—Citing: *Barber Asphalt Paving Co. v. Hunt,* 100 Mo. 22; *Warren v. Barber Paving Co.,* 115 Mo. 572; *Verdin v. St. Louis,* 131 Mo. 26; *Swift v. St. Louis,* 180 Mo. 80; *Barber Asphalt Paving Co. v. Field,* 188 Mo. 182; *Gilsonite Const. Co. v. Ark., etc., Coal Co.,* 205 Mo. 49; *Taylor v. Schroeder* (Mo.) 110 S. W. 26; *Hobart v. City of Detroit,* 17 Mich. 246; *Holmes v. Common Council* (Mich.) 120 Mich. 226; *Yarnold v. City of Lawrence,* 15 Kan. 126; *Bunker v. City of Hutchinson* (Kan.) 87 Pac. 884; *State ex rel. Dawes v. Commissioners* (Kan.) 45 Pac. 616; *Rhodes et al. v. Board of Public Works* (Colo.) 49 Pac. 430; *Mayor v. Bonnell,* 57 N. J. L. 424; *Baird v. Mayor,* 96 N. Y. 567; *City of Baltimore v. Raymo* (Md.) 13 Atl. 383; *Bye v. Atlantic City* (N. J.) 64 Atl. 1056; *Field v. Barber Asphalt Paving Co.,* 117 Fed. 925; *Silsby Mfg. Co. v. Allentown* (Pa.) 26 Atl. 646; *In re Dugro,* 50 N. Y. 513; *Holbrook v. City of Toledo,* 28 Ohio Cir. Ct. Rep. 284; *Field v. Barber Asphalt Paving Co.,* 194 U. S. 618; *Fones Hdw. Co. v. Erb,* 54 Ark. 651; *Schuck v. City of Reading* (Pa.) 40 Atl. 310; *Saunders v. Iowa City* (Ia.) 111 N. W. 529; *LaCoste v. City of New Orleans,* 119 La. 469; *Kilvington v. Superior,* 83 Wis. 222; *Perine v. Quackenbush,* 104 Cal. 684; *Mayor of Baltimore v. Flack* (Md.) 64 Atl. 702; *Dillingham v. Spartansburg* (S. C.) 56 S. E. 381; *Haslings v. Columbus,* 42 Ohio St. 585; Page & Jones on Taxation by Assessments (1909 Ed.) vol. 1, sec. 515, p. 804; Elliott on Roads and Streets (2d Ed.) pp. 595, 596, sec. 571; McQuillen on Munic. Ordinances (1904 Ed.) p. 864, sec. 554; 2 Page on Contracts, sec. 1050.

KANE, J. This was a suit commenced by the plaintiff in error, plaintiff below, in the superior court of Logan county, praying for

a temporary injunction against the defendants in error, defendants below, enjoining them from carrying out the terms of a certain paving contract entered into between them and the city of Alva, a city of the first class. A temporary injunction was allowed by the court below, and thereafter the defendants filed a motion to dissolve the same, which motion coming on to be heard was sustained, and an order entered dissolving the temporary injunction formerly granted. To reverse the order dissolving the temporary injunction this proceeding in error was commenced in this court.

It appears from the record that the mayor and council of the city of Alva in complying with chapter 10, art. 1, Oklahoma Sess. Laws 1907-08, adopted a resolution stating the material to be used should be the Hassam pavement, and setting out at length specifications for the manufacture of the material and the construction of the work. Pursuant to this resolution, a notice to paving contractors was published in words and figures as follows:

"In accordance with a resolution passed by the mayor and council of the city of Alva, Oklahoma, May 3rd, 1909, known as Resolution Number 30, sealed bids will be received and may be filed at the office of city clerk, in said city up to 8 o'clock p. m. on the 22nd day of June, 1909, for furnishing the materials and performing the work necessary in the paving, curbing, and otherwise improving the following street according to the plans and specifications now on file in the office of said city clerk: Sixth street, commonly known as College avenue, from the south side of Normal street to the new main line of the Atchison, Topeka & Santa Fe Railway Company, by preparing the roadway, by doing the necessary grading and paving, the same with a six (6) inch concrete curb, all as provided in said plans and specifications. Each bid must be accompanied by a certified check on some local bank in the sum of three (3) per cent. of the amount bid, to be forfeited to the city in case the successful bidder fails to enter into a contract and give the required bond in the sum of twenty (20) per cent. of the contract price, for the faithful performance of said work, and the holding of the city harmless from any and all damages that might occur. Also, the contractor will be required to give bond in the sum of fifteen (15) per cent. of the contract

636        SUPREME COURT OF OKLAHOMA.

Reed v. Rockliff-Gibson Const. Co. *et al.*

price as a guarantee for keeping the pavement in a state of good repair for a period of ten (10) years. The Hassam Paving Company, of Worcester, Massachusetts, is the owner of all patents and processes covering the laying of the pavement known as Hassam pavement, and the said Hassam Paving Company have filed with the city clerk of the city of Alva, Oklahoma, their agreement, in writing, to furnish to any bidder, to whom the contract may be awarded, the right to lay said pavement on the street above designated, under the patents and processes owned and controlled by said Hassam Paving Company, and said Hassam Paving Company also agreed, in writing, to furnish such bidder an expert, who will give proper advice as to the laying of said pavement, also a double Hassam grout mixer and a steam roller. The price at which such rights and services will be furnished by said Hassam Paving Company to bidders, that is to say, the price at which the right to lay said pavement on said street under said patents and processes, the services of said expert, the furnishing of said Hassam grout mixer and the said steam roller, is 42 cents per square yard for the finished pavement, and said rights and services will be furnished by said Hassam Paving Company to any and all bidders at the same stipulated price, to wit, 42 cents per square yard of finished pavement. Said agreement is on file in the office of said city clerk of Alva, Oklahoma, for the inspection of all bidders. At the time and place last aforesaid all bids filed in pursuance hereto, will be considered by the mayor and city council of said city of Alva. The contractor shall receive for the above work street improvement bonds according to hous e bill number 231, approved April 17, 1908. Said city reserves the right to reject any and all bids. This done by order of said mayor and city council, this 8th day of June, 1909."

During the time the foregoing notice was running the written offer therein referred to of the Hassam Paving Company was on file with the city clerk. On the 23d day of June, 1909, no other bids having been made, the bid of the defendant in error, who is not, as far as the record discloses, the owner or agent of the owner of the patented process or material, was declared to be the lowest and best bid by the mayor and city council, and on the same day the paving contract herein involved was entered into.

The contention of counsel for plaintiff in error is that this

notice for bids is repugnant to that part of section 4, art. 1, c. 10, *supra,* which provides that, "at the time and place specified in such notice, the mayor and council shall examine all bids received, and without unnecessary delay award the contract to the lowest and best bidder," for the reason that the selection by the city authorities of a patented process or material made competitive bidding impossible. As stated by counsel in their brief, the vital question involved is: "Can a patented material be used in carrying out the provisions of chapter 10, art. 1, Laws of 1907-08?" While the contention of counsel for plaintiff in error is supported by respectable authority, the modern text-writers and a great many courts maintain that the great weight of authority and reason sustain the opposite view. In discussing what is known as the Wisconsin rule, McQuillan on Municipal Ordinances, § 554, says:

"While this view has received judicial support, the tendency of the courts appears to be to adopt the opposite view."

Elliott on Roads and Streets (2d Ed.) § 571, discusses the same proposition as follows:

"The question whether a patented process can be used in the improvement of a street at the costs of the property owners has given rise to some discussion, but we think the better opinion is that it may be so used. If it were to be held otherwise, then progress might be arrested, and the property owners deprived of the best and most lasting improvement. There is, however, not a little to be said on the opposite side of the question, for if a patented process can be used, there can be no real competition. But the law as a practical science chiefly regards utility, and this consideration turns the scale."

*Hobart v. City of Detroit,* 17 Mich. 246, 97 Am. Dec. 185, seems to be the pioneer case favoring this side of the proposition. Mr. Chief Justice Cooley, who delivered the opinion of the court, says:

"But it is not, I apprehend, strictly correct to say that because the patented invention which must be made use of is owned by one person exclusively therefore no one else can be bidder. Every one has a right to bid, and to take upon himself the risk

of being able to procure the right to make use of the invention. Certainly the showing that Smith, Cook & Co. owned the right to put down the Nicholson pavement in the city of Detroit does not go far enough to show that they alone could bid on a contract for the purpose. If that firm held the privilege of putting down the pavement for sale at a regular price per square foot or yard, the opportunity to bid for a public contract would be as much open to public competition as for any other work requiring skilled labor. For aught we know, this was the case; and we may well take notice of the fact that it is frequently by thus selling the royalty that the owners of new inventions expect to obtain their reward. * * * True, the owner may at any time withdraw the royalty from sale in order to drive hard bargains; but, if he does, the public still retain a security in the power to refuse to contract with him, * * * and to my mind it is very clear that the Legislature would not intentionally have so tied up the hands of the city authorities as to preclude their making use of new and valuable inventions."

In the case at bar the owner of all patents and processes covering the laying of the Hassam pavement filed with the city clerk of Alva an agreement in writing to furnish to any bidder to whom the contracts might be awarded the right to lay said pavement and to furnish to such bidder an expert to give proper advice as to the laying thereof and a double Hassam grout mixer and a steam roller at a stipulated price.

In *Mayor, etc., of City of Baltimore et al. v. Flack et al.,* 104 Md. 107, 64 Atl. 702, it was held that:

"Whilst the courts of some of the states have held upon grounds which do not seem to us to be satisfactory that municipalities which are by their charters required to contract for materials, supplies, and public works with the lowest and best or the lowest responsible bidder are prohibited from purchasing or specifying a patented or monopolistic article or process, there is practically a unanimity upon the proposition that a contract involving in its execution the use of a patented material or process is not invalid when the contract for performing the work and furnishing the materials is let to the lowest bidder with the understanding that the patentee would allow the use of his patent and

superintend its construction in consideration of a certain specified sum paid him by whoever secured the contract."

We think there can be no doubt that the true intent and purpose of section 4 of chapter 10, *supra,* was to secure economy and protect the public from collusive contracts or favoritism or fraud, and to promote actual, honest, effective competition. Indeed, such was the holding of this court in construing a statute of like import in *Hannan v. Board of Education of the City of Lawton, ante,* p. 372, 107 Pac. 646. But we think the law is complied with in the absence of actual fraud or deception, when specifications are submitted to competitive bidders, although some article is specified which by reason of the patent on it is in the hands or under the control of a single bidder, when the contract for performing the work and furnishing the material is let to the lowest and best bidder with the understanding that the patentee would allow the use of his patent and superintend the construction of the work for whoever secured the contract. This doctrine is sustained by *Saunders v. Iowa City et al.,* 134 Iowa, 132, 111 N. W. 529, 9 L. R. A. (N. S.) 392; *La Coste v. City of New Orleans et al.,* 119 La. 469, 44 South. 267; *Holmes v. Common Council of Detroit,* 120 Mich. 226, 79 N. W. 200, 45 L. R. A. 121, 77 Am. St. Rep. 587; *State ex rel. v. Board of Commissioners of Shawnee County,* 57 Kan. 267, 45 Pac. 616; *Kilvington v. Superior,* 83 Wis. 222, 53 N. W. 487, 18 L. R. A. 45; *Bye v. Atlantic City et al.,* 73 N. J. Law, 402, 64 Atl. 1056; *Perine v. Quackenbush,* 104 Cal. 684, 38 Pac. 533; *Mayor of Baltimore v. Flack,* 104 Md. 107, 64 Atl. 702; *Dillingham v. Spartanburg,* 75 S. C. 549, 56 S. E. 381, 8 L. R. A. (N. S.) 412, 117 Am. St. Rep. 917; *Hastings v. Columbus,* 42 Ohio St. 585; *Holbrooks v. City of Toledo,* 28 Ohio Cir. Ct. R. 284.

The judgment of the court below is affirmed.

Hayes, Turner, and Williams, JJ., concur; Dunn, C. J., being disqualified, not sitting.