167 So. 794

## CARSON CADILLAC CORPORATION v. CITY OF BIRMINGHAM et al.

### 6 Div. 940.

Supreme Court of Alabama.

April 30, 1936.

314

Horace C. Wilkinson, of Birmingham, for appellant.

W. J. Wynn, Clarence Mullins, and James H. Willis, all of Birmingham, for appellees.

BROWN, Justice.

The· appellant, a corporation organized and existing under the laws of the state of Michigan, on the facts alleged in its bill, applied to the Equity division of the circuit court of Jefferson county for a temporary injunction restraining the appellees, the city of Birmingham, a municipal corporation of said county, and the Engineering Commission created by it, consisting of the other appellees,

"1. From publishing any advertisement for or otherwise calling for bids that will not permit the submission and consideration of a bid for forty-eight inch, fifty-four inch and sixty inch Carson bolted joints or couplings for the steel pipe to be used in the industrial water supply project of the City of Birmingham, Alabama, and

"2. Commanding them to forthwith and immediately revise or amend the specifications for materials to be used in the Birmingham industrial water supply project so as to include the Carson bolted joint or coupling on forty-eight inch, fifty-four inch. and sixty inch steel pipe used in said industrial water supply project, and

"3. Commanding them to receive and accept and consider any bid submitted by the complainant for Carson bolted joints or couplings on forty-eight inch, fifty-four inch and sixty inch steel pipe used in said Birmingham industrial water supply project."

The cause was set down for hearing, demurrers were filed to the bill, and on the hearing the court denied the prayer for the issuance of the injunction, sustained the demurrers, and dismissed the bill.

As a basis for relief, the complainant alleges, that said city of Birmingham is engaged in constructing an industrial water supply system for said city and its inhabitants; that said project is being constructed with "public funds granted to and loaned by the United States of America to the City of Birmingham, Alabama"; that said city has created an "Industrial Water Supply Engineering Commission to design and con-

struct said industrial water system"; that said Engineering Commission is vested with the authority and charged with the duty of preparing specifications for the materials to be used in the construction, and obtaining bids for the materials so required by the specifications, to be purchased by said city; that complainant "is engaged in the manufacture and sale of a bolted joint or coupling for steel pipe, known as the Carson Joint; that it has heretofore applied to said Engineering Commission and requested that the specifications prepared by said commission include the use of the Carson Joint in said industrial water supply project; that unless the specifications permit the use of said Carson Joint in said water supply project, the plaintiff cannot bid, or if it bids, its bid will not be considered, when bids are asked for on bolted joints or couplings on said project"; that a few days before filing the bill, "the Engineering Commission prepared or caused specifications to be prepared to include the Carson bolted joint or coupling on all pipe used in said project, but subsequently changed said specifications to include the Carson bolted joint or coupling for use with forty-two inch cast iron pipe and pipe of lesser diameter, but to exclude the Carson bolted joint or coupling on the steel pipe that will be used in said project, the effect of which is to prevent the complainant from submitting a bid, or having a bid considered if it is submitted for the Carson bolted joint or coupling on the forty-eight, fifty-four and sixty inch steel pipe that will be used in said project."

It is further alleged that "the Carson bolted joint or coupling is the equal, if not the superior of any other bolted joint or coupling manufactured; that so far as complainant is able to ascertain its only competitor for bolted joints or couplings of said sizes is S. R. Dresser Manufacturing Company of Bradford, Pennsylvania; that the effect of the change in the specifications by said Engineering Commission is to exclude the complainant as a competitor of said Dresser Company and to leave to it the forty-eight, fifty-four and sixty inch bolted joints or couplings, without competition. * * * that after said Birmingham Industrial Water Supply Engineering Commission, composed of the foresaid parties, had unanimously decided, after investigation, that the specifications for material used in the industrial water supply project for the City of Birmingham should include the Carson bolted joint or coupling for use on all pipe used in said project one

Bogert, a New York engineer, was employed by the City of Birmingham as a consulting engineer on said project and after he had been closely associated with representatives of the said Dresser Manufacturing Company for several days and accepted favors from them, he influenced the said Engineering Commission to change the specifications so as to exclude the Carson bolted joint or coupling on the steel pipe that will be used in said project; that the action of said Bogert was wholly unwarranted in that he has never had any experience with the Carson bolted joint or coupling and knows very little, if anything, about it; that he has had little or no experience in the construction of industrial water projects; that although joints of steel pipe of the size and kind to be used in said project were set up in the City of Birmingham and connected with the Carson bolted joint or coupling and subjected to a six hundred pound pressure test, which it successfully withstood, which was six times more than the pressure that will be required in said industrial water project, said Bogert never inspected the pipe so set up and tested. * * * that by reason of its being excluded from bidding on forty-eight, fifty-four and sixty inch bolted joints or couplings, its competitor is in position to charge whatever price it sees fit for bolted joints or couplings of those sizes and to reduce its price on forty-two inch bolted joints or couplings and smaller bolted joints or couplings, on which it has to compete with complainant, or if it does not see fit to reduce its price for said smaller bolted joints or couplings, it has the forty-eight, fifty-four and sixty inch bolted joints to itself without competition. * * * that it is advised, informed and believes and on such advice, information and belief charges and states that the law requires the City of Birmingham and its said Engineering Commission to award bids for bolted joints or couplings on said industrial water supply project to the lowest responsible bidder; that said Engineering Commission well knows such to be the case and said Engineering Commission knows that a bid to be submitted by the complainant for said Carson bolted joint or coupling on the steel pipe to be used in said project would be to-wit, fifty thousand dollars less than any bid it could obtain for any other bolted joint or coupling to be used on said project; that to get around awarding the contract to the complainant and in order

to award said contract to said S. R. Dresser Manufacturing Company, as said Engineering Commission undertakes and proposes to do and will do unless restrained by an appropriate order of this court, *the said Engineering Commission has excluded the Carson bolted joint or coupling from its specifications for bolted joints or couplings on the steel pipe to be used* in said project. * * * that it has been excluded from bidding or having its bid accepted on forty-eight, fifty-four and sixty inch bolted joints or couplings for use in said industrial water supply project either as a result of the failure or inability on the part of said Engineering Commission to consider and appreciate the Carson bolted joint or coupling, or as the result of improper influence brought to bear on said Engineering Commission by the said Bogert for the purpose of giving the said S. R. Dresser Company the contract for said bolted joints or couplings as aforesaid; that the exclusion of the complainant from an opportunity to bid on said bolted joints or couplings, or having its bid considered if submitted, *is unwarranted, illegal and contrary to law; it is a discrimination against the complainant and unjustifiable, interferes with its privileges and immunities which are protected by the Constitution of the United States, and gives its competitor a monopoly on bolted joints or couplings on the steel pipe that will be used on said project.*" (Italics supplied.)

After the defendants' demurrer was sustained to the original bill, the complainant added paragraph 15 thereto by amendment. To the bill as thus amended the court again sustained the demurrer, and the complainant again amended, by adding paragraph 16. And as thus amended, the demurrer was again sustained, and the complainant offering no further amendment the bill was dismissed.

Paragraphs 15 and 16, added by amendment, appear in the reporter's statement of the case.

The appellant rests its right to injunctive relief, first, on the contention that the defendant, city of Birmingham, is under contractual obligation to the United States, *and to the taxpayers of the United States* to advertise for bids on the couplings to be furnished on this job, inasmuch as the estimated price exceeds $1,000; and second, if competitive bidding is selected as a method of *letting contracts,* section 1911 of the Code 1923, requires a letting to the lowest bidder.

■■ It is a sufficient answer to appellant's first contention that there is nothing in the averments of the bill showing that the city of Birmingham is under any such contractual obligation. The most the bill avers is that said city is engaged in constructing said water system with money granted to and loaned by the United States. "It is a constituent part of the judicial system, that the judge sees only with judicial eyes, and knows nothing respecting any particular case of which he is not informed judicially." United States v. Wilson, 7 Pet. 150, 8 L.Ed. 640. Courts do not take judicial notice of the acts of government officials in respect to particular transactions, unless they are required to do so by statute, or such facts are or ought to be generally known within the court's jurisdiction. 3 Mayfield's Dig. 437, § 1; 15 R.C.L. pp. 1056–1057, §§ 1 and 2; 23 C.J. p. 58, § 1807.

■ The averments of the bill cannot be aided by the order of Secretary Ickes, referred to only in brief, inasmuch as courts will not take judicial notice of the acts of government officials in respect to particular transactions with individuals or corporations, and not of general public interest and knowledge.

■ The purpose of statutory or charter provisions requiring municipal corporations to let contracts on competitive bidding after notice, is "to secure economy and protect the citizens and taxpayers of the municipality from fraudulent favoritism in letting such contracts." 44 C.J. p. 324, § 2490; Reed v. Rockliff-Gibson Const. Co. et al., 25 Okl. 633, 107 P. 168, 138 Am.St.Rep. 937; Woolsey v. Tulsa, 90 Okl. 205, 216 P. 126; Anderson v. Fuller et al., 51 Fla. 380, 41 So. 684, 6 L.R.A. (N.S.) 1026, 120 Am.St.Rep. 170.

Section 1911 of the Code 1923 was construed in Van Antwerp et al. v. Board of Com'rs of City of Mobile et al., 217 Ala. 201, 204, 115 So. 239. To quote from the court's opinion, "Dealing with the application of the Code, § 1911, to this state of facts, it will be noted that section contains no mandatory requirement for letting municipal contracts on competitive bids. It is open to the corporate authorities to adopt this method, or to let contracts in such way as may be deemed best under the

conditions. But it does require that when competitive bidding is selected as the method of letting a contract, it must be let to the lowest responsible bidder *complying with the regulations prescribed before bids are called for*. In such case, the statute makes applicable the general rules of law governing the awarding of contracts by competitive bids." 217 Ala. 201, 204, 115 So. 239, 241. (Italics supplied.)

■ The most the bill avers is "That said Engineering Commission is required by the City of Birmingham, and is charged with the duty òf preparing specifications for the material to be used in the construction of said industrial water supply system and of obtaining bids for the *materials specified,* which are to be purchased by the City of Birmingham, Alabama." These averments, construed most strongly against the pleader, fall short of showing that said city has selected the method of competitive bidding for letting a contract, or that it contemplates letting a contract in any way. They indicate that the commission is to ascertain at what prices the materials may be purchased to meet the specifications prescribed, and the city will then purchase the materials with the money procured by a loan from the United States, or other money on hand.

From the averments of the bill, it is apparent that the appellant is not as much concerned about the method the city has adopted in obtaining the materials for such construction, as it is that it is not in a situation to submit prices or bids for its production, because such production does not meet the requirements of the specifications adopted by the Engineering Commission, and therefore it seeks to compel the commission to modify its specifications so that complainant may submit bids or prices for the sale of its bolted joint couplings for the steel pipes, ranging from 48 to 60 inches in diameter, on the theory that appellant's coupling is the equal or superior of any such coupling obtainable.

To grant such relief would be to substitute the judgment of the court and its process for the judgment and discretion of the Engineering Commission as to technical matters within the field of engineering.

■ It is well-settled that courts of equity, in the absence of fraud or gross abuse, will not interfere with the exercise of discretion by administrative boards in the determination of the necessity and require-ments of public accomplishment, much less control the judgment of such boards in respect to matters within the technical field of their duties and powers.

■ The averments of the bill fall far short of showing such fraud or gross abuse, or supporting the pleader's conclusion that the act of said board "is unwarranted, illegal and contrary to law * * * a discrimination against the complainant and unjustifiable, interferes with its privileges and immunities which are protected by the Constitution of the United States." Hays et al. v. Ahlrichs et al., 115 Ala. 239, 22 So. 465; Inge et al. v. Board of Public Works of Mobile, 135 Ala. 187, 33 So. 678, 93 Am.St.Rep. 20.

Grace v. Forbes, Mayor, et al., 64 Misc. 130, 118 N.Y.S. 1062, was brought by a taxpayer of the municipality, and the statute involved in that case required contracts to be let at competitive bidding.

The appellant is neither a resident of the city nor a taxpayer thereof; therefore, the judgment here is that appellant's bill as originally filed and as amended is without equity, and that the decree of the circuit court is due to be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.